UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MICHELLE JACKSON,                                    Civil Action No.

                Plaintiff,

    -against-                                   **COMPLAINT**

                                     (Jury Trial Demanded)

THE BOWERY RESIDENCE COMMITTEE,
THE JACK RYAN RESIDENCE, AND TODD
KELLEY (individually)


                        Defendants.
-----------------------------------------------------------------X

        Plaintiff MICHELLE JACKSON, (hereinafter referred to as "Plaintiff" or

"Jackson"), by and through her attorneys, the DEREK SMITH LAW GROUP, PLLC,

hereby complains of Defendants THE BOWERY RESIDENCE COMMITTEE

(hereinafter referred to as "BRC") and THE JACKSON RYAN RESIDENCE

(hereinafter referred to as "RYAN RESIDENCE") (herein collectively referred to as

"Defendants") upon information and belief as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this of this action

    pursuant to 28 U.S.C. §1331, §1343, and pendent jurisdiction thereto.

2. Additionally, this Court has supplemental jurisdiction under the State and City

    law causes of action asserted in this action.

1

3. Plaintiff satisfied all administrative prerequisites and is filing this case in a timely manner.

4. Venue is proper in the Southern District of New York under 28 U.S.C. 1391 (b)-(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Southern District of New York. Plaintiff further complains pursuant to the laws of the State of New York and the New York City Administrative Code of the City of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of gender discrimination, sexual harassment, retaliation, hostile work environment, and unlawful termination.

## PARTIES

5. Plaintiff JACKSON is an individual woman residing in the State of New York, in Kings County.

6. At all times material, Plaintiff JACKSON was an employee of Defendant BRC and RYAN RESIDENCE.

7. Upon information and belief, and at all times hereinafter mentioned, Defendant's BRC and RYAN RESIDENCE are Domestic Limited Liability Companies which are authorized to conduct business in the State of New York. Defendant's BRC and RYAN RESIDENCE is located and operated at 131 West 25th Street, 12th Floor, New York, N.Y 10001.

8. At all times relevant hereto, all of the herein Defendants were Plaintiff's joint employers. All above entities-controlled Plaintiff's employment.

2

9.  At all times material, Defendant's employee Todd Kelley (hereinafter referred to as "KELLEY") was and is an individual residing in the State of New York.

10. At all times material, Defendant KELLEY was and is an employee of Defendant.

11. At all times material, Defendant's employee KELLEY was the Site Coordinator for Defendant BRC.

12. At all times material, Defendants' employee KELLEY had supervisory authority over Plaintiff, including the power to hire and fire Plaintiff JACKSON.

## FACTS

13. This case involves sexual harassment, gender discrimination, hostile work environment, and retaliation of Plaintiff by Defendants.

14. On or about June 17, 2013, Defendant hired Plaintiff as a community technician.

15. In or around June of 2013, Defendant, Plaintiff began working the overnight shift for Defendant BRC.

16. In or around December of 2013, KELLEY asked Plaintiff out on a date. Plaintiff declined KELLEY's offer because of rumors that KELLEY "got around" (frequently dated) with his subordinates.

17. In or around January of 2014, KELLEY asked Plaintiff out on a date for the second time, telling Plaintiff that the rumors about him were not true. At the time, Plaintiff agreed to go out with KELLEY but later rescinded upon learning that KELLEY already had a girlfriend.

3

18. KELLEY told Plaintiff that he and his former girlfriend were no longer in a relationship and that they merely continued living together until they could find more suitable arrangements.

19. KELLEY then began to pursue Plaintiff even more aggressively, pressuring Plaintiff to go out with him at every opportunity.

20. Plaintiff reported KELLEY's aggressive behavior to her supervisor, Jason Thomas. Plaintiff explained that KELLEY's behavior made her feel uncomfortable and caused her to worry that KELLEY could leverage Plaintiff's job in exchange for complying with his requests.

21. In or around May 2014, Plaintiff and KELLEY both attended a coworker's graduation party, which was hosted at a lounge in downtown Manhattan. Following the party, Plaintiff and KELLEY engaged in consensual intimate relations for the first time.

22. Over the ensuing months, Plaintiff and KELLEY continued to see each other socially and became close friends. They would often speak on the phone for hours at a time and divulge intimate secrets to each other.

23. During their may conversations, Plaintiff learned that KELLEY had a very violent history, particularly with women in his life.

24. For example, on numerous occasions, KELLEY revealed to Plaintiff that he had physically assaulted the mother of his child multiple times in the past.

25. As Plaintiff became aware of KELLEY's history of violence, Plaintiff began to fear for her safety.

4

26. In or around July 2014, Plaintiff's brother unexpectedly passed away. Plaintiff and her brother shared a very close bond and his death affected her greatly.

27. In or around August of 2014, rumors regarding Plaintiff's intimate relationship with KELLEY began spreading around the workplace. Plaintiff, already distraught over the sudden loss of her brother, decided she should request a transfer at work and start fresh in a new environment.

28. Upon learning of Plaintiff's plans to transfer, KELLEY became irate, threatening Plaintiff and saying that if she went through with the transfer request and put his job in jeopardy he would "destroy" Plaintiff. Plaintiff's desire to transfer was supplanted by her fear of KELLEY.

29. On or about September 8, 2014, Plaintiff met with TAREEN and requested a transfer despite her immense fear of how KELLEY may react. Due to her fear of KELLEY, Plaintiff specifically asked TAREEN to keep their meeting as well as what was discussed confidential.

30. Later that same night, KELLEY called Plaintiff and told her that he and TAREEN met for drinks and TAREEN told him everything about her meeting with Plaintiff.

31. In or around January of 2015, Plaintiff contacted her direct supervisor, JASON THOMAS, regarding her fear of working around KELLEY and requesting their meeting be kept confidential. However, once again Plaintiff's supervisor relayed the information to KELLEY who confronted Plaintiff and told her to remain quiet or she would "be sorry."

5

32. In or around November of 2016, KELLEY called Plaintiff every day for over two weeks. Plaintiff did not answer his calls or respond to his text messages. Plaintiff confronted KELLEY at work and requested that he cease any further attempts to contact her, stating that she wanted to be left alone, that she was being sexually harassed, and for their future contact to be strictly professional.

33. KELLEY disregarded Plaintif's pleas and persisted in his attempts to coerce Plaintiff into a romantic relationship by calling Plaintiff daily both on her personal phone and at her workstation.

34. On or about November 29, 2016, KELLEY immediately reached for Plaintiff's breasts, grabbing her shirt, and pulling her face toward him while attempting to kiss Plaintiff against her will. Plaintiff attempted to push KELLEY away, clearly stating that she did not want any sort of romantic involvement with him any longer and that she was currently dating another man.

35. Following Plaintiff's rejection of his advances, KELLEY became outraged and screamed stating Plaintiff would regret her decision to rebuff KELLEY's sexual advances.

36. KELEY then threatened to strangle Plaintiff due to her rejection of his unwanted sexual advances. Plaintiff was fearful for her life and attempted to calm KELLEY down to no avail. KELLEY demanded to know how long Plaintiff had been dating her new boyfriend and reiterating that she would come to regret rejecting his advances and stating that she had better remember he was the "boss."

37. On or about December 16, 2016, KELLEY initially terminated Plaintiff in retaliation for her rebuffing his sexual advances.

38. On or about December 16, 2016, Plaintiff filed a complaint with Human Resources regarding KELLEY's sexual advances toward her and complained of KELLEY's conduct in retaliation for her objection to his advances.

39. In or around December 2016, KELLEY was terminated.

40. In or around January 2016, Plaintiff was reinstated and informed Defendants that she did not want to work at the same site because she feared that she would be the subject of retaliation.

41. During the ensuing months, Plaintiff received formal write ups for tardiness, no-calls, and no-shows in error. Plaintiff was in fact present on the days she was marked either tardy or absent and produced documentation on several occasions showing the same.

42. On or about August 30, 2017 Plaintiff was unlawfully terminated.

43. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff to.

44. As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she is having difficulty eating and sleeping.

45. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured unwarranted professional humiliation resulting in extreme emotional distress, severe depression, and extreme anxiety.

46. As a result of Defendants' unlawful and discriminatory actions, Plaintiff felt
extremely humiliated, degraded, victimized, embarrassed, and emotionally
distressed.

47. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has
endured unwarranted financial hardships and irreparable damage to her
professional reputation.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered
and will continue to suffer the loss of income, the loss of salary, bonuses,
benefits and other compensation, which such employment entails. Plaintiff has
also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss
of enjoyment of life, and other non-pecuniary losses.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(not against individual defendants)**

49. Plaintiff repeats, and realleges each and every allegation contained in the above
paragraphs of this compliant.

50. Title VII states in relevant part as follows:

   (a) Employer practices: It shall be an unlawful employment practice for an
   employer:

   (1) To fail or refuse to hire or to discharge any individual, or otherwise to
   Discriminate against any individual with respect to his compensation,
   terms, conditions, or privileges of employment, because of such
   individual's race, color, religion, sex, or national origin;

8

51. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

52. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by subjecting Plaintiff to discrimination on the basis of her sex/gender, together with causing a hostile work environment based on the same.

53. Defendant's BRC and RYAN RESIDENCE engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

54. Defendant's BRC and RYAN RESIDENCE violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (not against individual defendants)

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed

any practice made an unlawful employment practice by this subchapter, or

because she has made a charge, testified, assisted or participated in any manner

in an investigation, proceeding, or hearing under this subchapter."

57. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

§2000e seq. by discriminating against Plaintiff with respect to the terms,

conditions or privileges of employment because of her opposition to the

unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

58. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

59. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an

unlawful discriminatory practice: "(a) For an employer or an employee or agent

thereof, because of the actual or perceived age, race, creed, color, national origin,

gender, disability, marital status, sexual orientation or alienage or citizenship status of

any person, to refuse to hire or employ or to bar or to discharge from employment

such person or to discriminate against such person in compensation or in terms,

conditions or privileges of employment."

60. Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, §8-107(l)(a) by creating/maintaining

discriminatory working conditions, and otherwise discriminating against the Plaintiff

as set forth herein.

10

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

61. Plaintiff repeats, reiterates and realleges each and every allegation made in the
    above paragraphs of this Complaint as if more fully set forth herein at length.

62. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be
    unlawful discriminatory practice: "For an employer… to discharge … or otherwise
    discriminate against any person because such person has opposed any practices
    forbidden under this chapter..."

63. Each of the Defendants engaged in an unlawful discriminatory practice in violation
    of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating
    against the Plaintiff because of Plaintiffs opposition to the unlawful employment
    practices of Plaintiffs employer.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

64. Plaintiff repeats, reiterates and realleges each and every allegation made in the
    above paragraphs of this Complaint as if more fully set forth herein at length.

65. New York City Administrative Code Title 8-107(19) Interference with protected rights. It
    shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten
    or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person
    in the exercise or enjoyment of, or on account of his or her having aided or encouraged
    any other person in the exercise or enjoyment of, any right granted or protected pursuant
    to this section.

11

66. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

69. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION: SUPERVISORY LIABILITY
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a.   An employer shall be liable for an unlawful discriminatory practice based upon the

12

conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or

(2)  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3)  the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

72. Defendants violated the section cited herein as set forth.


## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER STATE LAW

73. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to

13

hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

74. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

75. Plaintiff hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A NINTH CAUSE OF ACTION
FOR DISCRIMINATION
UNDER STATE LAW**

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

78. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

14

## AS A TENTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

81. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## TITLE VII
## (Not against individual defendants)

82. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

83. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that is shall be unlawful employment practice for an employer: "(1) to……..discriminate against any of his employees…..because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

15

84. Defendant KELLEY engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e *et seq*. by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

85. Defendant KELLEY violated the above and Plaintiff suffered numerous damages as a result.

### AS A TWELFTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### STATE LAW

86. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

87. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

88. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

89. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

90. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues properly triable thereby


Dated: New York, New York

     October 24, 2018

                    Respectfully Submitted,

                    **DEREK SMITH LAW GROUP, PLLC.**


                    By: _____/s/_____
                      Paul Liggieri, Esq.
                      One Penn Plaza, Suite 4905
                      New York, N.Y. 10119
                      (212) 587-0760